UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASEY STROM,<br><br>                              Plaintiff,<br><br>        v.<br><br>GARY PETERSHAGEN,<br><br>                              Defendant. | CASE NO. 2:24-cv-00583-BAT<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Defendant Gary Petershagen moves for dismissal with prejudice of Plaintiff Casey Strom's copyright infringement complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 14. Defendant also seeks an award of his costs and fees pursuant to 17 U.S.C. § 505.

Plaintiff sued Defendant for infringement of a photograph taken by Plaintiff, entitled "Lake Stevens Food Bank Groundbreaking" (the "Photograph"). Dkt. 1-1, Ex. A. Plaintiff alleges Defendant wrongfully used a portion of his Photograph without authorization in a political mailer and in a post of the political mailer on Defendant's campaign Facebook page (collectively, the "Political Mailer"). Defendant contends his use of the Photograph was a fair use protected by Section 107 of the Copyright Act. Dkt. 14.

Plaintiff opposes the motion. Dkt. 17. Defendant filed a reply. Dkt. 18. For the reasons explained herein, the Court grants the motion and denies the request for costs and fees.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are set forth in Plaintiff's Complaint (Dkt. 1), Exhibit A thereto (Dkt. 1-1), and in documents referenced in the complaint, including Plaintiff's May 3, 2019 Facebook publication of the Photograph, Plaintiff's March 1, 2022, September 1, 2022, and January 5, 2023 letters with enclosures, and the alleged infringing Political Mailer. *See* Dkt. 1 ¶¶ 8, 10-14 and Dkt. 14, Exs. 1-6.[1]

On May 3, 2019, Plaintiff took unsolicited photos of the ceremonial groundbreaking for a new Lake Stevens Community Food Bank. The Photograph at issue is entitled "Lake Stevens Food Bank Groundbreaking." The Photograph shows eight community members with hardhats and shovels breaking ground at the location of the food bank. Among the community members shown is Defendant (second from the right), then an acting Lake Stevens city councilman. Dkt. 1 ¶ 8; Dkt. 14, Exs. 2, 4. Plaintiff published the Photograph on his Facebook page the same day, May 3, 2019, and "tagged" Defendant in the published Photograph, which resulted in the Photograph being automatically posted to Defendant's Facebook page. *Id.*, Ex. 1.

Plaintiff alleges Defendant first infringed the Photograph over two years later, on September 30, 2021, when Defendant used a cropped version of the Photograph in a political mailer distributed in late September or October, prior to the November 2021 election. *See* Dkt. 14, Ex. 5. Plaintiff also alleges Defendant used the cropped version of the Photograph in a campaign Facebook post on October 24, 2021, in the form of a digital version of the political

---

[1] When ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested and matters of which the court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 2

mailer. *Id.* at page 10 (cropped Photograph highlighted with red border); *id.* at Ex. 6. Defendant's uses are referred to collectively herein as the "Political Mailer."

On October 29, 2021, Plaintiff registered the Photograph with the United States Copyright Office on October 29, 2021, Registration No. VA2277688.

<u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* These facts need not be overly specific, but they must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

Under Rule 12(b)(6), the court is generally limited to the allegations of the complaint, "which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Nonetheless, a court may dismiss a complaint if it lacks a cognizable legal theory. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). Dismissal for failure to state a claim is proper only "if it appears beyond doubt" that the non-moving party "can prove no set of facts which would entitle him to relief." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007) (internal quotation marks and citation omitted).

1

## DISCUSSION

2

For purposes of this motion, Defendant assumes the Photograph is owned by Plaintiff, is

3

protectable, and was used by Defendant without authorization. *See Feist Publ'ns, Inc. v. Rural*

4

*Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (ownership of

5

valid copyright and copying of constituent elements of the work that are original are two

6

necessary elements of infringement claim). Defendant contends, however, that his use of the

7

Photograph was fair use protected by Section 107 of the Copyright Act. Defendant bears the

8

burden of proof on this affirmative defense. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164,

9

1170 (9th Cir. 2012) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539,

10

561, 105 S.Ct. 2218 (1985)).

11

The "assertion of fair use may be considered on a motion to dismiss, which requires the

12

court to consider all allegations to be true, in a manner substantially similar to consideration of

13

the same issue on a motion for summary judgment, where no material facts are in dispute." *See*

14

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) (affirming district

15

court's dismissal of declaratory judgment action based on fair use). The fair use doctrine presents

16

a mixed question of law and fact, which requires "a case-by-case determination whether a

17

particular use is fair." *Harper & Row*, 471 U.S. at 560. "If there are no genuine issues of material

18

fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact

19

can reach only one conclusion, a court may conclude as a matter of law whether the challenged

20

use qualifies as fair use of the copyrighted work.'" *Hustler Magazine, Inc. v. Moral Majority,*

21

*Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986). While a plaintiff must plead facts sufficient to prove a

22

justiciable cause of action, it is not necessary to plead facts that disprove fair use to survive a

23

Rule 12(b)(6) motion to dismiss. *See Garner v. Higgins*, 2015 WL 574352, at *3 (W.D. Va. Feb.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 4

11, 2015) (dismissing complaint for infringement of copyrighted photograph in political mailing on fair use defense). *See also*, *Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir. 1986) (finding fair use where the operative facts were undisputed or assumed); *Savage v. Council on American-Islamic Relations, Inc.*, 2008 WL 2951281, at *9 (N.D.Cal. July 25, 2008) (granting motion for judgment on the pleadings because copying was protected fair use); *Righthaven LLC v. Realty One Grp., Inc.*, 2010 WL 41145413, at *2 (D.Nev. Oct. 18, 2010) (dismissing copyright claim on a motion to dismiss on the basis of a fair use defense); *Lombardo v. Dr. Seuss Enters.*, L.P., 279 F. Supp. 3d 497, 513 (S.D.N.Y. 2017) (granting motion for judgment on the pleadings on the issue of fair use).

A.    Section 107 (Fair Use Doctrine)

Section 107 of the Copyright Act provides, "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a particular use is a fair use, the Copyright Act directs courts to consider the following factors:

1.    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2.    the nature of the copyrighted work;

3.    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.    the effect of the use upon the potential market for or value of the copyrighted work.

*Id*. The factors are not to be applied mechanically, but on a case-by-case analysis balancing the relevant factors. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994). The scope of

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 5

1   fair use is broader when the information relayed involves issues of concern to the public. *Harper*

2   *& Row*, 471 U.S. at 555-556; *Savage*, 2008 WL 2951281, at *4. The key question is whether the

3   facts on record are "sufficient to evaluate each of the [fair use] statutory factors." *Harper & Row*,

4   471 U.S. at 560. The Court concludes the facts on record here are sufficient to evaluate each of

5   the fair use factors.

6   B.   Analysis of Fair Use

7       1.   Purpose and Character of the Use

8       The first fair use factor is "the purpose and character of the use, including whether such

9   use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).

10  Several principles may bear on this factor, including, as relevant here: transformation and

11  commerciality. *Monge*, 688 F.3d at 1173.

12      a.   Transformation

13      The central purpose of this inquiry is to determine whether and to what extent the

14  new work is "transformative." *Campbell*, 510 U.S. at 579. A work is "transformative" when the

15  new work does not "merely supersede the objects of the original creation" but rather "adds

16  something new, with a further purpose or different character, altering the first with new

17  expression, meaning, or message." *Id*. (internal quotation and alteration omitted). Conversely, if

18  the new work "supersede[s] the use of the original," the use is likely not a fair use. *Harper &*

19  *Row*, 471 U.S. at 550–51 (internal quotation omitted) (publishing the "heart" of an unpublished

20  work and thus supplanting the copyright holder's first publication right was not a fair use); *see*

21  *also Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 778–82 (9th Cir.2006) (using a

22  copy to save the cost of buying additional copies of a computer program was not a fair use).

23

1  "A use is considered transformative only where a defendant changes a plaintiff's

2  copyrighted work or uses the plaintiff's copyrighted work in a different context such that the

3  plaintiff's work is transformed into a new creation." *Wall Data*, 447 F.3d at 778. "[T]he more

4  transformative the new work, the less will be the significance of other factors, like

5  commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. This

6  inquiry goes beyond just whether the photographs themselves were altered and instead examines

7  whether the use of the photos, in the specific context used, was transformative. *Perfect 10, Inc. v.*

8  *Amazon.com, Inc.*, 508 F.3d 1146, 1164-65 (9th Cir. 2007) (citing *Campbell,* 510 U.S. at 579).

9  The function of the work can be different "even where ... the allegedly infringing work makes

10 few physical changes to the original or fails to comment on the original." *Seltzer v. Green Day,*

11 *Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (use of "scream icon" in concert backdrop with few

12 physical changes was transformative).

13     Conversely, "[i]n the typical 'non-transformative' case, the use is one which makes no

14 alteration to the expressive content or message of the original work." *Seltzer*, 725 F.3d at 1177)

15 (citing *Monge*, 688 F.3d at 1176)(use of stolen secret wedding photographs describing the

16 photographs and surrounding circumstances was "wholesale copying"); *Elvis Presley Enters.,*

17 *Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) (use of copyrighted clips of Elvis's

18 television appearances was not transformative when clips were played without much interruption

19 and served the same intrinsic value protected by the plaintiffs' copyrights).

20     Defendant contends his use of the Photograph was transformative in nature because it

21 changed the appearance and meaning of the Photograph, and thereby changed its purpose and

22 character. The Court agrees.

23

1        The Political Mailer used a very small portion (less than 10%) of the Photograph (the

2   "Cropped Photograph"). The Cropped Photograph was placed alongside two other photographs

3   (one headshot of Defendant and one with Defendant and his wife). On the same side of the

4   Political Mailer are also photographs of former Lake Stevens Mayor John Spencer, along with

5   substantial quotes from both former Mayor Spencer and current Lake Stevens' mayor Brett

6   Gallery endorsing Defendant's re-election. A large photograph of both mayors with Defendant,

7   with quotes and language supporting Defendant's re-election are on the opposite side of the

8   Political Mailer. Dkt. 14 at 16; Ex. 5. Thus, the Political Mailer transformed the appearance of

9   the Photograph by using it as part of a broader work with a political purpose – the re-election of

10  Defendant. This differs substantially from Plaintiff's purpose, as stated when he published the

11  Photograph his Facebook page: "Proud to be part of the Lake Stevens Food Bank

12  groundbreaking ceremony today. I am excited to see my community thrive." Dkt. 14, Ex. 1.

13       The Political Mailer engaged in political commentary with text and additional imagery

14  offering identification and endorsements of Defendant, with no mention of the Lake Stevens

15  Food Bank groundbreaking. Of the eight individuals shown in the Photograph, only headshots of

16  three (including Defendant) and none of the shovels appear in the Cropped Photograph used in

17  the Political Mailer.

18       Use of the Photograph for political discourse during an election "is precisely what the

19  Copyright Act envisions as a paradigmatic fair use." *Dhillon v. Does 1-10*, 2014 WL 722592, at

20  *5 (N.D. Cal. Feb. 25, 2014) (citing *Hustler Magazine*, 796 F.2d at 1152–53). *See also*,

21  *Peterman v. Republican National Committee*, 369 F.Supp.3d 1053, 1061 (D. Mon. February 22,

22  2019)("[a]lthough the RNC "ma[de] few physical changes" to the Photograph, "new expressive

23  content or message is apparent," satisfying the transformation inquiry).

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 8

1               b.      <u>Commerciality</u>

2               Relevant to the first fair use factor is whether the "use is of a commercial nature

3    or is for nonprofit educational purposes." 17 U.S.C. § 107(1). While the commercial use of

4    copyrighted work is presumptively unfair, the Copyright Act "expressly permits fair use for the

5    purposes of criticism and commentary." *Hustler Magazine*, 796 F.2d at 1152–53. Thus, even if a

6    particular use is solely commercial in nature, "the presumption of unfairness can be rebutted by

7    the characteristics of the use." *Id*. "The crux of the profit/nonprofit distinction is not whether the

8    sole motive of the use is monetary gain but whether the user stands to profit from exploitation of

9    the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. 539.

10              There is no question here that Defendant used the Cropped Photograph in the Political

11   Mailer to promote his reelection campaign. As part of a political campaign message, the Political

12   Mailer is noncommercial in nature, and First Amendment issues of freedom of expression in a

13   political campaign are clearly implicated." *Keep Thomson Governor Comm. v. Citizens for*

14   *Gallen Comm.*, 457 F. Supp. 957, 961 (D.N.H. 1978) (finding political ad appropriating snippet

15   of opponent's political ad to be noncommercial); *Am. Family Life Ins. Co. v. Hagan*, 266 F.

16   Supp. 2d 682, 697 (N.D. Ohio 2002) ("[A politician's] solicitation of contributions [via internet

17   advertisements] . . . is properly classified not as a commercial transaction at all, but completely

18   noncommercial."); *Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1053 (W.D. Wis.

19   2013), *aff'd*, 766 F.3d 756 (7th Cir. 2014) (use of mayor's photograph on t-shirt with political

20   message was fair use).

21              Plaintiff argues Defendant's use was commercial because the Photograph was not an

22   integral part of the Political Mailer, it was used without commentary, and Defendant gained a

23   financial benefit by not paying a licensing fee. Dkt. 17 at 12. Plaintiff's reliance on *Worldwide*

*Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1117-18 (9th Cir. 2000), for the

proposition that Defendant's use was commercial in nature is inapposite. In *Worldwide*, the

Defendant copied the work *in its entirety* for distribution to its members and therefore, "profited"

and gained an "advantage" or "benefit" from its distribution and use of the work without having

to account to the copyright holder. *Id.* at 1118.

The use in *Worldwide* is entirely different from the noncommercial nature of Defendant's

use of the Cropped Photograph in the Political Mailer, which was distributed as part of a political

campaign. This noncommercial use arguably did not circumvent any actual or potential licensing

revenues from Plaintiff or interfere with any market for the Photograph. In fact, Plaintiff had

freely posted and tagged others with the Photograph on social media prior to Defendant's use.

Thus, anyone wanting to copy the Photograph could do so at no cost directly from Plaintiff's

social media.

Even assuming Defendant "profited" in some way from his use of the Photograph in the

Political Mailer, when the use has both commercial and non-profit characteristics, the court may

consider "whether the alleged infringing use was primarily for public benefit or for private

commercial gain." *Hustler Magazine*, 796 F.2d at 1153. Here, there is no question the use was

primarily for the public benefit as part of the Lake Stevens city council political race.

Considering both transformation and commerciality, the undersigned concludes this

factor "weighs substantially" in favor of a finding of fair use.

2. <u>Nature of Copyrighted Photograph</u>

The second factor focuses not on the alleged infringer's use but on the "nature of the

copyrighted work" itself. 17 U.S.C. § 107(2). "[C]reative works are 'closer to the core of

intended copyright protection' than informational and functional works . . ." *Dr. Seuss Enters.,*

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 10

1   *L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997) (quoting *Campbell*, 510

2   U.S. at 586); *Hustler Magazine*, 796 F.2d at 1154; *Peterman*, 369 F. Supp. 3d at 1063.

3          The Photograph is an informational and factual depiction of a newsworthy event, *i.e.*, the

4   opening of a food bank in Lake Stevens. As such, it is more likely to be the subject of a fair use.

5   *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997); *see also*

6   *Harper & Row*, 471 U.S. at 563 (finding the "law generally recognizes a greater need to

7   disseminate factual works than works of fiction or fantasy"). As the Ninth Circuit explained,

8   "[a]lthough the Videotape is not without creative aspect in that it is the result of [the

9   videographer's] skills with a camera, still this factor makes it a great deal easier to find fair use."

10  *Los Angeles News Serv.*, 108 F.3d at 1122. And, as explained by an Illinois District Court when

11  examining a photograph very similar to the Photograph in this case:

12          This Court need only inspect the Photograph to characterize it as a 'candid image
            taken of [a politician] at a political event' and primarily factual in nature. Because
13          Plaintiff Galvin took the Photograph during a live parade, he obviously did not
            stage the action depicted in it. Whatever artistry he contributed (by way of the
14          angle, framing, or other composition of the Photograph) could not plausibly
            outweigh its factual nature.

15  *Galvin v. Illinois Republican Party*, 130 F. Supp. 3d 1187, 1195 (N.D. Ill. 2015). When

16  considering the Photograph in this context, it is easily characterized as "a candid image taken of

17  [a politician] at a political event and primarily factual in nature." *Id*. Plaintiff took and

18  voluntarily posted at least ten photographs of the May 3, 2019 Lake Stevens Food Bank

19  groundbreaking event and Plaintiff admits the Photograph was taken to document the

20  groundbreaking event. Dkt. 14, Ex. 1. The Photograph is clearly more informative than creative.

21         In addition, Plaintiff voluntarily published the Photograph – with no copyright

22  information or photographer attribution – on his Facebook page and tagged Defendant prior to

23  Defendant's use of cropped version of the Photograph in the Political Mailer. The Supreme

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 11

1    Court clearly articulated that the scope of fair use protection is narrower with published works.

2    *Harper & Row*, 471 U.S. at 564; *Accord Peterman*, 369 F. Supp. 3d at 1063. This factor "weighs

3    substantially" in favor of a finding of fair use. *See Los Angeles News Serv.*, 108 F.3d at 1122.

4    ("[T]he scope of fair use is narrower with respect to unpublished works."); *see also*, *Peterman*,

5    369 F. Supp.3d at 1063 (Recognizing that any internet user could download a high-quality

6    version of the image; which, after all "is the purpose of sharing an image on a social media

7    platform.")

8        Accordingly, this factor "weighs substantially" in favor of a finding of fair use.

9    C.    Amount and Substantiality of Portion Used

10       The third factor in the fair use inquiry is the "[t]he amount and substantiality of the

11   portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). With this

12   factor, courts consider not only "the quantity of the materials used" but also "their quality and

13   importance." *Campbell*, 510 U.S. at 587; *Peterman*, 369 F. Supp. 3d at 1064. If the subsequent

14   user of the work "only copies as much as is necessary for his or her intended use, then this factor

15   will not weigh against him or her." *Kelly*, 336 F.3d at 820-21.

16       An objective comparison of the Photograph and the Cropped Photograph used in the

17   Political Mailer (both physical and electronic forms) confirms that both the quantity and quality

18   of the work used were exceedingly minor. There is no dispute that more than 90% of the

19   Photograph was cropped out and not used in the Political Mailer. Plaintiff argues Defendant used

20   the "heart" of the Photograph by taking the focus, *i.e.*, the smiling face of Defendant. Plaintiff

21   argues the placement of Defendant's smiling face in the Photograph "leads the viewer's eye to

22   Defendant's smiling face." Dkt. 17 at 14. This argument is irrational as Plaintiff's taking of the

23   Photograph was not solicited. Plaintiff did not stage the circumstances or subjects of the

1   Photograph and did not control which of the individuals in the Photograph would be smiling.

2   Although he may have angled or framed the Photograph in a particular manner, this does not

3   detract from the factual nature of the Photograph. Additionally, none of the Photograph's context

4   was included in the Political Mailer as it did not include the groundbreaking, shovels, or the

5   other five individuals. Under these circumstances, Defendant's use of the Photograph was

6   minimal and necessary to reasonably identify Defendant – which was the sole purpose of the

7   Political Mailer.

8          Accordingly, this factor "weighs substantially" in favor of a finding of fair use.

9   D.     Effect on Market

10         The fourth fair use factor is "the effect of the use upon the potential market for or value

11  of the copyrighted work." 17 U.S.C. § 107(4). It is "undoubtedly the single most important

12  element of fair use" because it strikes at the heart of the policy served by the Copyright Act.

13  *Harper & Row*, 471 U.S. at 566-67. "[A] use that has no demonstrable effect upon the potential

14  market for, or the value of, the copyrighted work need not be prohibited in order to protect the

15  author's incentive to create." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,

16  450 (1984). Ultimately, the fourth factor asks whether the use serves a "different market

17  function" than the original. *Campbell*, 510 U.S. at 591. Courts "consider not only the extent of

18  market harm caused by the particular actions of the alleged infringer, but also whether

19  unrestricted and widespread conduct of the sort engaged in by the defendant would result in a

20  substantially adverse impact on the potential market for the original." *Id.*, 510 U.S. at 590

21  (internal quotation marks, alteration, and citation omitted).

22         Here, Plaintiff does not allege Defendant's use of the Photograph in the Political Mailer

23  has had any impact on the actual or potential sale, marketability, or demand for the Photograph.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 13

Dkt. 1, ¶¶ 8-30. There is no suggestion Plaintiff currently has, or ever had, any kind of market for

the Photograph or that he has attempted or plans to sell the Photograph. Also, Plaintiff freely

published the Photograph without copyright claim or photographer attribution on his social

media site and posted to Defendant's social media site, and it has been more than five years since

the Photograph was taken. Thus, someone wanting a copy of the Photograph could easily

download the original image freely from Plaintiff's Facebook page.

Accordingly, this factor "weighs substantially" in favor of a finding of fair use.

E.   Motion for Fees and Costs

Defendant also asks the Court for an award of attorney's fees and costs associated with

defending this case. Section 505 of the Copyright Act governs the award of costs or attorneys'

fees in copyright infringement actions:

> In any civil action under this title, the court in its discretion may allow the
> recovery of full costs by or against any party other than the United States or an
> officer thereof. Except as otherwise provided by this title, the court may also
> award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. An award of fees to a prevailing party in a copyright action is not mandatory,

but rather left to the discretion of the Court. *Fogarty v. Fantasy, Inc*., 510 U.S. 517, 523 n.11

(1994). Courts consider five non-exclusive factors to consider in determining whether to grant a

prevailing party attorneys' fee: (1) degree of success obtained; (2) frivolousness; (3) motivation;

(4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the

need, in particular circumstances, to advance considerations of compensation and deterrence."

*Manufacturing Automation and Software Systems, Inc. v. Hughes*, 2019 WL 2396308 at *3 (C.D.

Cal. June 3, 2019) (citing *Fogerty*, 510 U.S. at 533).

Ultimately, courts may not rely on the factors if they are not "'faithful to the purposes of

the Copyright Act. Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 14

criterion." *Berkla v. Corel Corp*., 302 F.3d 909, 923 (9th Cir. 2002) (quoting *Fogerty*, 94 F.3d at 558). "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524.

Although the Court found the fair use factors weigh in favor of Defendant, the Court cannot say that an award of fees in this case will further the purposes of the Act, *i.e.* to encourage the production of original literary, artistic, and musical expression for the good of the public or advance considerations of deterrence. There is no indication Plaintiff's suit was unreasonable or brought in bad faith. The Court is also mindful that it is not the purpose of the Copyright Act to deter a litigant from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful. *Minden Pictures, Inc. v. John Wiley & Sons, Inc*., No. C-12-4601 EMC, 2014 WL 1724478, at *8 (N.D. Cal. April 29, 2014) (citation and quotations omitted).

Accordingly, the Court **DENIES** the defendant's motion for attorney's fees and costs.

<u>CONCLUSION</u>

Because all statutory factors favor Defendant's claim for fair use, the Court finds, as a matter of law, the Political Mailer was a fair use of the Photograph and is protected by Section 107 of the Copyright Act. The Photograph is an informational and factual presentation of a historical event; Defendant's use of a cropped version (approximately 10%) of the Photograph in the Political Mailer was transformative, altered the purpose of the Photograph, and was for political and non-commercial use; and such use had no effect on any potential market for or value of the Photograph.

Accordingly, it is **ORDERED**:

1.     Defendant's motion to dismiss (Dkt. 14) is **GRANTED**, and Plaintiff's Complaint (Dkt. 1) is **dismissed with prejudice**.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 15

2.      Defendant's motion for fees and costs is **denied**.

3.      The Clerk shall send a copy of this Order to the parties.

DATED this 2nd day of August, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 16